IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| RICHARD T. HAWKINS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:13–cv–32 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Richard T. Hawkins ("Hawkins") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Hawkins alleges that the Administrative Law Judge ("ALJ") erred by not finding that Hawkins was limited to sedentary work or less, and more specifically, that the ALJ improperly rejected the opinion of his treating physician and failed to adequately consider his ankle impairment. I conclude that substantial evidence supports the ALJ's finding that Hawkins was capable of performing light work. Accordingly, I **RECOMMEND DENYING** Hawkins' Motion for Summary Judgment (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 12.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Hawkins failed to demonstrate that he was disabled under the Act.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

## CLAIM HISTORY

Hawkins protectively filed for SSI and DIB on February 15, 2011, claiming that his disability began on September 11, 2009. R. 13. Hawkins later amended his alleged onset date to November 19, 2011. R. 13. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 47–68, 69–90. On June 21, 2012, ALJ Brian P. Kilbane held a hearing to consider Hawkins' disability claim. R. 27–46. Hawkins was

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

represented by an attorney at the hearing, which included testimony from Hawkins, his neighbor Richard Willburn, and vocational expert Ashley Wells. R. 27–46.

On June 29, 2012, the ALJ entered his decision analyzing Hawkins' claim under the familiar five-step process[3] and denying his claims for benefits. R. 10–21. The ALJ found that Hawkins suffered from the severe impairments of degenerative disc disease status-post surgical fusion and right ankle degenerative joint disease status-post surgical repairs. R. 15. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15. The ALJ further found that Hawkins retained the RFC to perform light work, with the following additional limitations:

> the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday, sit with normal breaks for a total of about 6 hours in an 8-hour workday, frequently kneel and crouch or bend at the knees, occasionally climb ramps or stairs, balance, stoop or bend at the waist, or crawl, but may never climb ladders, ropes, or scaffolds, and would need to avoid concentrated exposure to vibrations and hazards, including machinery and heights.

R. 16. The ALJ determined that Hawkins could not return to his past relevant work as a construction worker or a maintenance mechanic (R. 20), but that Hawkins could work at jobs that exist in significant numbers in the national economy: namely night cleaner, assembler, and cashier. R. 21. Thus, the ALJ concluded that Hawkins was not disabled. R. 21–22. On May 17,

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

2013, the Appeals Council denied Hawkins' request for review (R. 1–5), and this appeal followed.

## ANALYSIS

Hawkins generally asserts that substantial evidence does not support the ALJ's finding that he was capable of performing light work, and that at best he could work at the sedentary exertional level. Hawkins argues that because of his age a limitation to sedentary work would cause him to "grid-out" under Medical-Vocational Rule 201.14, which would direct a finding of "disabled."[4] Specifically, Hawkins contends that the ALJ accorded improper weight to the opinion of his treating pain management doctor, and correspondingly, that the ALJ failed to adequately consider his ankle impairments. I find that substantial evidence supports the ALJ's decision as a whole.

Hawkins argues that the ALJ gave improper weight to the opinion rendered by his treating pain management physician, Murray Joiner, M.D., who treated both Hawkins' ankle and back conditions. Dr. Joiner has not completed a medical source statement providing a specific analysis of Hawkins' impairments or functional limitations. Nevertheless, Dr. Joiner stated in a February 2012 treatment note that Hawkins was likely disabled as a result of his pathology. R. 685. The ALJ considered this opinion, but found the "opinion to be inconsistent with a longitudinal review of the credible evidence of record." R. 19. Specifically, the ALJ identified a treatment note from Hawkins' back surgeon that he would be able to return to work within a few months of back surgery as evidence that Hawkins is not disabled. Hawkins contends that in

---

[4] The Medical-Vocational Guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2, are tables that "indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's residual functional capacity…." Hall v. Harris, 685 F.2d 260, 265 (4th Cir. 1981).

4

rejecting Dr. Joiner's opinion in this manner the ALJ failed to adequately consider his ankle impairment, which was a focus of Dr. Joiner's treatment.

The social security regulations require that an ALJ give the opinion of a treating physician source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citations omitted).

The record reflects that, prior to the relevant period, Hawkins sustained several right ankle injuries and underwent multiple surgeries as a result. In addition to ankle problems that persisted into the relevant period, Hawkins suffered from back and leg pain for which he underwent a diskectomy and fusion at the L4-S1 level in March 2012. R. 691-692, 725-734. Medical records following the surgery, however, suggest that the operation was successful in relieving much of Hawkins' pain and symptoms. R. 716, 719–21

5

At the time of his alleged onset date Hawkins had been under the care of Murray E. Joiner, M.D., a physical medicine and rehabilitation specialist, since 2008. R. 278–79. In September 2011, Hawkins reported to Dr. Joiner that he had persistent right ankle and foot pain, as well as low back pain, and that he was having more trouble standing and walking. R. 484. On examination, Dr. Joiner observed extensive bony hypertrophy in Hawkins' right ankle, as well as generalized tenderness throughout the ankle mortis. R. 485. In his back, Hawkins had decreased lumbar lordosis, bony prominence in the L5-S1 region, and mild paraspinal tenderness. However, Hawkins' straight leg raise test was negative bilaterally, and he had full strength throughout. Dr. Joiner assessed chronic right ankle pain status post multiple surgeries, degenerative arthritis of the right ankle, bilateral dysesthesias, and low back pain. Dr. Joiner prescribed Percocet, recommended back x-rays, and gave Hawkins back injections. R. 485.

On November 19, 2011, an MRI of Hawkins' lumbar spine showed bilateral L4 defects with associated anterolisthesis at L4-L5, as well as severe neuroforaminal stenosis in the region. R. 492. The images also showed disc extrustion at L5-S1 with severe right neuroforaminal stenosis and displacement of the S1 nerve root. R. 492. Hawkins followed up with Francis Shen, M.D., at UVA Hospital, and reported continued back and leg pain. R. 495–96. Hawkins demonstrated that he could toe walk and heel walk without difficulty, and Dr. Shen noted that he ambulated without aids and had full strength in both legs. R. 495. Hawkins did have some pain bilaterally in his legs, but had a negative straight leg raise test. X-rays showed lumbar degenerative disk disease and grade II degenerative spondylolisthesis at L4-L5. Dr. Shen also diagnosed a herniated disk at L5-S1. Dr. Shen wanted to try and maximize conservative measures, but that a "discussion of surgical intervention will be reasonable." R. 496. Hawkins

6

received an epidural steroid injection at L4-5 on February 8, 2012 in an effort to relieve his lumbar back pain. R. 673.

Hawkins returned to Dr. Joiner on February 16, 2012 and continued to report "persistent, unchanged bilateral ankle and foot pain." R. 684. Hawkins was pleased with the symptomatic relief from back injections at UVA. On exam, Hawkins' right ankle again had extensive bony hypertrophy, incisions from his previous surgeries, and generalized tenderness throughout the ankle joint. R. 685. Hawkins had a negative straight leg raise test, intact sensation, and full strength. R. 685. Dr. Joiner continued Hawkins on his medication and referred him to UVA for ongoing management. Dr. Joiner concluded in the treatment notes that "[i]n light of patient's pathology, as well as his prior work experience and education level it is likely the patient is disabled. He is capable of sedentary duty at best, however, options are limited due to his prior experience and education." R. 685.

On February 29, 2012, Hawkins reported persistent worsening back and leg pain to Dr. Shen at UVA. R. 675. Dr. Shen noted that Hawkins still ambulated without aids, and that he had good strength in his extremities and sensation intact. However, with Hawkins reporting worsening symptoms, Dr. Shen discussed a surgical decompression with Hawkins. Dr. Shen told Hawkins that "from a spine standpoint, there would be no reason that he could not do some degree of work." R. 676. Furthermore, Dr. Shen noted that "I do think that for 3 months post-surgery, [Hawkins] needs to be on restrictions, but once that period of recovery is complete, I would allow him back to activities and work." R. 676.

On March 27, 2012, Hawkins underwent an L4-S1 decompressive laminectomy, fusion, and diskectomy at UVA. R. 725–28. The procedures were without complication.

7

On April 4, 2012, Hawkins saw Joseph Park, M.D., for evaluation of his right ankle pain. R. 719–21. Hawkins reported "near complete resolution" of his right leg pain as the result of his surgery, and that "[h]e is able to ambulate at his baseline and feels much improved." R. 719. Hawkins stated that he did not want further surgical intervention of his ankle, as he had gained significant relief since his diskectomy. Dr. Park's physical examination showed a significant right ankle deformity, with limb length reduced approximately two centimeters, and a varus deformity above his ankle. R. 720. Dr. Park did not observe swelling or tenderness to palpitation. Dr. Park assessed Hawkins with a likely right ankle/tibia non-union with improved pain since his surgery. R. 720. Dr. Parks recommended follow up in six months, and indicated that Hawkins could try a lace-up boot or an ankle foot orthosis to support his ankle. R. 720–21.

On April 19, 2012, Hawkins saw Deana Bahrman, PA, for follow up for his back surgery. R. 716. Hawkins reported that he still had some pain, mostly at night, but denied other red flag signs or symptoms. Hawkins stated that he occasionally has left-sided numbness that radiated down his legs, "but overall feels improved since prior to surgery." Ms. Bahrman's physical examination showed that Hawkins had equal strength and sensation in both legs, and that he was able to perform a heel and toe walk. X-rays showed that Hawkins' hardware was in good condition with no evidence of complication. Ms. Bahrman concluded that Hawkins was "doing well" and encouraged him to continue his routine activities while weaning off of pain medication.

State agency doctors twice reviewed Hawkins' medical file as part of his disability claim. On April 28, 2011, state agency physician Richard Surrusco, M.D., reviewed Hawkins' medical records at the initial consideration level. R. 47–53. Dr. Surrusco found that Hawkins' impairments limited to a range of work at the light exertional level. R. 52–53. Identical

8

functional findings were made by state agency doctor Robert Keeley, M.D., on reconsideration in August 2011. R. 69–75.

At the administrative hearing on June 21, 2012, Hawkins testified that he had severe right foot and ankle pain while standing or walking, and stated that "[p]retty much every step I take is painful." R. 34. Hawkins testified that his right leg is one inch shorter than his left as the result of his ankle surgeries, and that this caused lower back pain as well. R. 35–36. Hawkins stated that he used a cane daily and a walker occasionally, although he did not bring either device to the hearing. R. 36. Hawkins testified that his ankle swells up every day, and that he has to lie down and elevate the leg for extended periods R. 37–38. Hawkins reported that the was able to perform household chores, although he required breaks every 10 to 15 minutes. R. 39. Hawkins' neighbor also testified that Hawkins has difficulty lifting things and getting around on his feet. R. 39–41.

Hawkins submitted to the Appeals Council an opinion from Dr. Joiner dated September 14, 2012 written on a prescription note stating that "[d]ue to ongoing, severe, debilitating pain, gait abnormalities, chronic medication use, and reactive depression with resultant interference with personal skills, it is my opinion that Mr. Hawkins is permanently and totally disabled." R.744. Hawkins latches onto this opinion and the statement by Dr. Joiner dated February 16, 2012 that Hawkins was likely disabled and at least capable of only sedentary work. He contends that the ALJ should have accorded these opinions controlling weight and found him capable of only sedentary work.

This record supports the ALJ's finding that Dr. Joiner's opinion of disability was inconsistent with the credible evidence of record. The evidence shows that for portions of the relevant period Hawkins suffered from significant back, leg, and ankle pain. The treatment notes following Hawkins' March 2012 back surgery show that he tolerated the surgery well, achieved

9

a good recovery and had relief of his pain. Records from Dr. Park at UVA from April 2012 indicate that Hawkins benefitted from the surgery, and that his right leg pain was almost completely resolved soon after the operation. R. 719. Hawkins told Dr. Parks that despite some continued pain in his right ankle, he did not want more ankle surgery because "he gained significant relief since his diskectomy." R. 719. Dr. Parks noted that Hawkins was "able to ambulate at his baseline and feels much improved." R. 719. On examination, while Dr. Parks noted a significant ankle deformity, he observed no swelling or tenderness. R. 720. Dr. Parks asked Hawkins to follow up in six months and suggested a lace up boot or ankle foot orthosis if needed. R. 720–21. Hawkins again reported in April 2012 to Ms. Bahrman that he still had occasional symptoms, "but overall feels improved since prior to surgery." R. 716. Ms. Bahram's physical exam did not suggest disabling symptoms, and she encouraged Hawkins to continue his routine activities and wean off pain medication. In sum, the medical records post-surgery do not support either the severity of symptoms Hawkins' alleges or Dr. Joiner's assessment that Hawkins was disabled.

Hawkins quarrels with the ALJ's reliance on the treatment notes of Dr. Shen, Hawkins' back specialist, as a basis for discrediting the opinion of Dr. Joiner, a pain management specialist who treated Hawkins' ankle. The ALJ noted that Dr. Shen expected that Hawkins could return to work within a few months of surgery, and that this suggested Hawkins' back impairment did not meet the 12-month durational requirement. R. 20, 676. As an initial matter, the ALJ did not solely rely on Dr. Shen's records in rejecting Dr. Joiner's opinion, as claimed by Hawkins. Pl.'s Br. Summ J. 7. Instead, the ALJ found that Dr. Joiner's opinion was inconsistent with the longitudinal evidence of record, which includes records indicating Hawkins did well following his back surgery. R. 19. Dr. Shen indicated that "from a spine standpoint" Hawkins was not

10

disabled. Also, the record shows that the surgery greatly helped Hawkins' leg pain, which, in turn, positively helped with the ankle difficulties. I see no error in the ALJ's analysis in this regard.[5]

Hawkins complains that the ALJ failed to explicitly consider each factor enumerated in the regulations relevant to the weighing of Dr. Joiner's opinion. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)–(5) (treatment relationship, supportability of opinion, consistency with record, whether physician is specialist). However, an "ALJ is not required to engage in a point-by-point analysis of the evidence as it relates to each of the factors," only to provide good reasons for the weight given to the medical opinion when considering the factors. Murrell v. Colvin, 4:13-CV-124-FL, 2014 WL 2114890, at *5 (E.D.N.C. May 20, 2014). The ALJ's reasoning that Dr. Joiner's opinion was inconsistent with the longitudinal evidence of record, albeit brief, is sufficient for judicial review and supported by substantial evidence in the record.

When reviewing the medical record in his written decision, the ALJ noted that Dr. Park's physical examination in April 2012 "revealed no significant right ankle deformity" when in fact, the treatment note states that Hawkins did have a significant right ankle deformity. R. 19, 720. Hawkins argues that this misstatement is a fatal flaw in the ALJ's decision, and that "[t]he failure to properly acknowledge plaintiff's significant ankle deformity prevented an accurate and appropriate consideration of all of the plaintiff's impairments." Pl.'s Br. Summ. J. 8. I disagree. The ALJ's review of the medical evidence and testimony contains numerous references to Hawkins' ankle injuries and his reports of ankle pain. The ALJ referenced Hawkins' past ankle surgeries as well as Hawkins' reports of symptoms and the results of physical examinations by

---

[5] I note as well that Dr. Joiner's September 2012 opinion that Hawkins was "permanently and totally disabled" came well after Hawkins' back surgery, and Dr. Joiner did not examine Hawkins after his surgery. While this opinion was not before the ALJ, for these reasons and the evidence set forth above, substantial evidence supports the Appeal Council's finding that the opinion did not provide a basis for changing the ALJ's decision. R. 2.

Dr. Joiner. R. 17–18. When discussing the remainder of Dr. Park's findings from April 2012, the ALJ noted Hawkins' reduction in limb length caused by his ankle surgeries and Hawkins' varus deformity above the ankle. R. 19.

Moreover, it is apparent from the ALJ's reasoning that the ALJ adequately considered Hawkins' ankle impairment in connection with his other impairments. The ALJ found Hawkins' ankle injury to be a severe impairment (R. 15) and explicitly found that Hawkins did not have a combination of impairments which met or medically equaled a listed impairment. R. 15–16. The ALJ found Hawkins was limited to a range of light work with additional climbing, balancing, stooping and bending limitations that accommodate his ankle impairment. R. 16. Although the ALJ misstated a portion of Dr. Park's assessment, the ALJ did not find that Hawkins did not have an ankle deformity. The ALJ analyzed the entire record and assessed the severe impairments affecting Hawkins both individually and in combination in arriving at the decision that Hawkins was not disabled. It is apparent that the ALJ was well aware of the nature of Hawkins' ankle impairment, and I find that substantial evidence supports the decision as a whole. Accordingly, I must affirm his decision.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

      Enter: August 5, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge